## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| CHARLES WESTON ELSEA, JR., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 3:22-cv-424 |
| v. | ) | |
| | ) | Judge Atchley |
| MICHAEL WALTER PARRIS, | ) | |
| LISA HELTON, KEVIN GERALD | ) | Magistrate Judge McCook |
| GENOUSE, STACEY OAKES, | ) | |
| STEVEN JONES, and BRANDON | ) | |
| FOSTER, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, an inmate in the custody of the Tennessee Department of Correction ("TDOC") currently housed at the Morgan County Correctional Complex ("MCCX"), has filed a pro se civil rights action under 42 U.S.C. § 1983 [Doc. 1], a motion for leave to proceed *in forma pauperis* [Doc. 2], and a motion for injunctive relief [Doc. 3]. The Court will address Plaintiff's motion to proceed as a pauper before screening Plaintiff's complaint in accordance with the Prison Litigation Reform Act ("PLRA") and addressing his motion for injunctive relief.

## I. MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion to proceed *in forma pauperis* [Doc. 2] that he lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 twenty percent (20%) of Plaintiff's preceding

monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk also will be **DIRECTED** to furnish a copy of this Order to the Court's financial deputy. This Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.     ANALYSIS

### A.      Background

The complaint filed by Plaintiff references various criminal charges, court actions, and transfers between State and Federal custody, but it does not provide sufficient background to give context to Plaintiff's allegations. Therefore, for purposes of clarity, the Court notes that Plaintiff was convicted of first-degree murder in 1997 and was sentenced to life in TDOC custody. *See* Tenn. Dep't of Corr., Felony Offender Information Search, https://foil.app.tn.gov/foil/search.jsp (last accessed Nov. 30, 2022).[1] Plaintiff unsuccessfully sought habeas relief in this Court as to his State-court judgment [*See* Doc. 10 in No. 1:04-CV-261]. He subsequently attempted to file a successive habeas petition in this Court challenging his murder conviction, but the Sixth Circuit denied him permission to do so [*See* Doc. 7 in No. 1:13-CV-2590].

---

[1] Pursuant to Fed. R. Evid. 201(c), the Court may take judicial notice of the information provided on the Inmate Locator Service. *See, e.g.*, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (citing *Harvey v. Eichenlaub*, 2007 WL 2782249, at *1 (E.D. Mich. Sept. 24, 2007)).

While in TDOC custody, Plaintiff and other co-conspirators were charged in this Court with federal drug trafficking and money laundering conspiracies for conduct that occurred between 2016 and 2020 [*See* Doc. 280 in No. 2:20-CR-74][2]. Following a jury trial, Plaintiff was found guilty [*See* Doc. 506 in No. 2:20-CR-74]. On August 18, 2022, Plaintiff was sentenced to an effective sentence of life [*See* Doc. 627 in No. 2:20-CR-74]. Plaintiff filed a notice of appeal on the same day of his federal sentencing, and the Sixth Circuit Court of Appeals appointed him appellate counsel on September 28, 2022 [*See* Docs. 523 and 639 in No. 2:20-CR-74]. Plaintiff's criminal appeal is ongoing [*See, generally*, No. 2:20-CR-74 and USCA No. 22-5279].

On November 28, 2022, Plaintiff filed the instant action complaining of events that occurred at MCCX both prior to his transfer to federal custody and upon his return from federal custody [*See, generally*, Doc. 1].

B.     **Relevant Allegations of Plaintiff's Complaint**

On September 29, 2020, MCCX Warden Michael Parris allowed federal agents to remove Plaintiff from his cell at MCCX against his will and place him in a manager's office where he was questioned and then served with a detainer [Doc. 1 p. 26]. Another detainer was filed on October 6, 2020, and Warden Parris allowed United States Marshals to take custody of Plaintiff until August 18, 2022, when Plaintiff was returned to TDOC custody [*Id.*]. Warden Parris allowed the Marshals to take custody of Plaintiff "without allowing [him] and[/] or [the] Governor of Tennessee the 30 days to file [a] motion before the detainer could be honored" [*Id.* at 26-27].

When Plaintiff returned to TDOC custody on August 18, 2022, as a minimum-custody inmate, he was met in MCCX's intake holding area by Corporal Daughtrey and Sergeant Moore,

---

[2] The Court also may take judicial notice of its own records. *See* Fed. R. Evid. 201(b)(2); *United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir. 1977).

3

who informed Plaintiff that he would not be allowed to stay at MCCX and would not be allowed in general population per the decision of Warden Parris [*Id.* at 9, 18]. As a result, Plaintiff was held for sixty-two days in an administrative segregation cell before he was placed in a maximum-security cell [*Id.* at 5, 7, 9, 18, 23]. As a result of Warden Parris' classification, Plaintiff lost the "good time" he would receive as a minimum-security inmate, access to rehabilitation programs, and the ability to request parole [*Id.* at 10]. While Plaintiff was housed in segregation, Plaintiff was advised that he was awaiting transfer to another prison, and that Warden Parris "was refusing to allow [Plaintiff] out on his compound," even though on September 29, 2022, Plaintiff was reclassified by a MCCX counselor to a minimum-restriction classification [*Id.* at 15]. Warden Parris took these actions, Plaintiff maintains, without following his oath of office, proper TDOC policy, or the requirements of due process [*Id.* at 5, 7, 9, 23].

When Plaintiff entered TDOC custody, he arrived with his legal work and federal discovery on three separate flash drives [*Id.* at 12]. Plaintiff alleges that Warden Parris has denied him access to these legal materials and discovery, even though a United States District Judge ordered that Plaintiff have such access to pursue his criminal case, in which he was proceeding pro se [*Id.* at 5, 12]. During the second week of October 2022, Stacey Oakes came to Plaintiff's cell door and told him he would not be able to access his legal work at MCCX because Oakes — who is ostensibly an Associate Warden — along with Warden Parris, and MCCX Internal Affairs Officer Brandon Foster "read DEA sensitive reports and viewed videos in federal cell phone extractions" and determined there were inappropriate things in them, such as on-going investigative information concerning Plaintiff's criminal co-conspirators [*Id.* at 5-6, 13, 16]. The denial of access to these materials, Plaintiff contends, interferes with his right to pursue his criminal appeal and/or federal and State habeas relief [*Id.* at 13-14].

4

Plaintiff states that Warden Parris has "a vindictive" discriminatory intent regarding Plaintiff because Plaintiff's ex-wife, a former dentist at MCCX, had a relationship with Warden Parris before she married Plaintiff [*Id*. at 6]. Plaintiff contends that the fact that his ex-wife remains on Plaintiff's visitation list has created hardship and has led to Warden Parris "committing illegal acts outside the scope of professionalism" [*Id*. at 6]. Despite Warden Parris' conduct, Plaintiff maintains, no form of investigation or remedial measures have been taken [*Id*.].

Plaintiff states that while he was in the recreational yard on November 4, 2022, he saw MCCX's Regional Director for the Eastern District, Warden Kevin Gerald Genovese, walking into the prison [*Id*. at 7]. Plaintiff told Warden Genovese of the problems he had experienced at MCCX stemming from Warden Parris' personal issues with Plaintiff [*Id*. at 7-8]. Plaintiff asked for Warden Genovese's help, and Warden Genovese admitted that he was aware of Plaintiff's issues and had intended to come speak to him, thereby admitting that he knew of a risk to Plaintiff that he had failed to intervene to assuage [*Id*. at 8]. Plaintiff alleges that Warden Genovese's failure to assist him stems from Warden Genovese's friendship with Warden Parris and their mutual business investment in a property in Tiptonville, Tennessee [*Id*. at 8].

Plaintiff maintains that TDOC Commissioner Lisa Helton has allowed all Defendants "to illegally commit official misconduct and official oppression" against Plaintiff and "has not in any way stepped in and intervened" despite having multiple messages delivered to her office concerning "illegal violations" and requests to have Plaintiff removed from MCCX [*Id*. at 4].

Aggrieved of these circumstances and incidents, Plaintiff seeks monetary damages and a variety of declaratory and injunctive relief [*Id*. at 28-31].

### C.    Screening Standards

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant

who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

Formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings filed in civil rights cases and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### D. Analysis

#### 1. Time-Barred Claims

Federal district courts apply the State's statute of limitations for personal injury actions in proceedings arising under 42 U.S.C. § 1983. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Tennessee, that period is one year. *See* Tenn. Code Ann. § 28-3-104; *Foster v. State*, 150 S.W.3d

6

166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim). When the statute begins to run is an issue of federal law. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the cause of action is complete. *See, e.g.*, *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1162 (6th Cir. 2021) (acknowledging that the "standard" rule starting limitations period is "when the plaintiff has a complete and present cause of action").

Plaintiff complains that he was improperly questioned and/or served with a detainer in September and October 2020. Plaintiff did not pursue these allegations, however, until two years later when he filed the instant suit on or about November 28, 2022. Therefore, any claims related to these allegations are time-barred and will be dismissed.

### 2. Custodial Designation/Assignment

Plaintiff's second allegation is that he was placed in administrative segregation upon his return to MCCX, and that he was thereafter put into maximum security without cause, in violation of policy, and in violation of his right to participate in various programs, earn "good time," and request parole.

To state a cognizable claim regarding his placement in administrative segregation and/or maximum security, Plaintiff must demonstrate the existence of a liberty interest that is protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). To establish such an interest, Plaintiff must show that being deprived of that right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). However, it is well

7

established that neither an inmate's security classification nor his segregated status involve an "'atypical and significant' hardship implicating a protected liberty interest." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (holding a maximum security classification does not satisfy *Sandin* "because heightened security status is one of the ordinary incidents of prison life"); *see also Meachum v. Fano*, 427 U.S. 215, 228-29 (1976) (holding federal courts do not sit to supervise administration of state prisons).

Therefore, the fact that Plaintiff was reclassified upon his return to MCCX and placed in administrative segregation and/or maximum security does not, in and of itself, implicate any constitutional protections. Moreover, Plaintiff's complaint alleges that he has only been subjected to these unfavorable custodial conditions since August 18, 2022. Accordingly, even if Plaintiff faces restrictive conditions that would implicate the due process clause eventually, he has not been exposed to them for a sufficient duration to invoke its protections. *See Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008) (finding duration of restrictive conditions relevant in whether experience is "atypical and significant").

Further, Plaintiff cannot state an Eighth Amendment claim based on his custodial status unless he alleges that this segregation deprived him of some basic human need. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). Plaintiff's inability to participate in rehabilitative programs does not meet this standard, as Plaintiff possesses no constitutional right to such programs. *See, e.g., Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs.") (citation omitted). Neither does Plaintiff possess a protected right to earn sentence credits or obtain parole, either constitutionally or under Tennessee law. *See Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987) (noting there is no

8

constitutional right to parole); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (holding inmates have no constitutional right to good time credit); Tenn. Code Ann. § 41-21-236(a)(2) (providing that sentencing credits are discretionary); Tenn. Code Ann. § 40-28-117(a) (defining parole as "a privilege and not a right" and placing parole decision in discretion of parole board).

Additionally, to the extent Plaintiff alleges that Defendants violated TDOC policy in assigning his custodial designation and/or destination, he likewise fails to state a constitutional claim. TDOC policies do not create a protectable interest, and therefore, failing to follow them does not raise an issue of constitutional significance. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim."); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (finding failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Accordingly, all allegations related to Plaintiff's custodial assignment fail to state a claim upon which relief may be granted, and they will be dismissed.

### 3. Access to Courts

Plaintiff complains that he has been denied access to his legal materials, which has impacted his ability to pursue his criminal appeal and various state and federal actions. However, Plaintiff concedes that he has been denied access to these materials because officials deemed them to involve sensitive matters in on-going criminal proceedings, and as the Court previous noted, Plaintiff has been convicted of federal charges stemming from a drug/money laundering conspiracy he ran out of MCCX and/or other penal institutions. In fact, strict supervision was a recommendation of Plaintiff's federal criminal judgment [*See* Doc. 627 p. 2 in No. 2:20-CR-74]. Therefore, the mere fact that Plaintiff has not been granted access to these records is not constitutionally problematic, as detention facilities may "reasonably limit the times, places, and

9

Case 3:22-cv-00424-CEA-JEM   Document 5   Filed 12/06/22   Page 9 of 15   PageID #: 65

manner in which inmates may engage in legal research and preparation of leg[al] papers. . . so long as the regulations do not frustrate access to the courts." *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).

While Plaintiff complains that he lacks access to the discovery from his criminal case, he has not alleged facts suggesting that his inability to access the materials has interfered with his right to appeal, particularly as he has appointed counsel to assist him in that criminal appeal. *See, supra*, Part II.A. Additionally, Plaintiff has been able to file at least two federal habeas actions and the instant § 1983 suit while in TDOC custody. *Id.* Therefore, Plaintiff has not alleged that he has or will suffer some legal harm as a result of his inability to access the restricted materials, and therefore, this allegation fails to state a claim upon which relief may be granted. S*ee Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding inmate claiming lack of access must demonstrate his prison officials impeded non-frivolous civil rights or criminal action); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation.").

### 4. Failure to Intervene

Plaintiff contends that Warden Genovese and TDOC Commissioner Lisa Helton bear responsibility in this action due to their knowledge of Plaintiff's grievances and failure to intervene to cure them. It is well established law that a defendant cannot be held legally responsible merely because of his or her supervisory status. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"). Instead, to demonstrate a supervisor's liability, the plaintiff must demonstrate, at minimum, that the supervisory official "implicitly authorized, approved[,] or

10

knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted). However, a "mere failure to act" despite awareness of an employee's misconduct is not sufficient. *Walters v. Stafford*, 317 F. App'x 479, 486–87 (6th Cir. 2009) (quotation omitted). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.

Plaintiff has not provided sufficient factual support to plausibly infer that either Defendants Helton or Genovese "directly participated" in or "acquiesced" to constitutional violations by MCCX staff. These Defendants' failure to respond to Plaintiff's grievances is insufficient to show personal involvement in any alleged wrongdoing on the part of Defendants. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under §1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983). Without factual contentions to support "the reasonable inference" that either of these defendants "is liable for the misconduct alleged," Plaintiff fails to state a claim upon which § 1983 relief may be granted as to Defendants Genovese and Helton. *Iqbal*, 556 U.S. at 678.

Additionally, Plaintiff's complaint contains no factual allegations of wrongdoing by Defendant Steven Jones, a Warden at MCCX. Accordingly, Plaintiff has failed to state a claim against this Defendant, and he will be dismissed. *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) ("A critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting *Iqbal*, 556 U.S. at 676); *Frazier v. Michigan*, 41

11

F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

### 5.    Retaliation

Most, if not all, of Plaintiff's complaints stem from his belief that Warden Parris is hostile to Plaintiff because Plaintiff married a woman with whom Warden Parris had once been in a relationship.  Plaintiff does not advise the Court when he married or divorced his ex-wife, or when Warden Parris was in a relationship with Plaintiff's ex-wife.  Nonetheless, the Court will consider whether Plaintiff's allegations are sufficient to state a claim against Warden Parris for retaliation.

To establish a § 1983 retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Whatever animus exists between Warden Parris and Plaintiff, there is no indication in Plaintiff's complaint that any adverse action was taken against him because he exercised a constitutional right, and the events Plaintiff complains of are not issues of constitutional proportions.  Accordingly, Plaintiff has not stated a retaliation claim under § 1983 against Warden Parris.

### 6.    Official Capacity Claims

Plaintiff has not set forth a constitutional claim against any named Defendant.  Nonetheless, out of an abundance of caution, the Court finds that Plaintiff may not maintain any claims against Defendants against in their official capacities.

### a.     Monetary Damages

Each Defendant named in this action is an employee of the TDOC, and therefore, suit against Defendants in their respective official capacities is essentially suit against the State of Tennessee. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). In an action for monetary damages against a state officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993); *see also Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").   However, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding TDOC is not a "person" within the meaning of § 1983).

Moreover, the Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979).  The State of Tennessee has not waived its immunity to suit under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513–14 (6th Cir. Nov. 17, 2021) (holding state officials sued in official capacity immune from suit under doctrine of sovereign immunity absent consent).  Accordingly, Plaintiff cannot maintain suit against Defendants in their official capacities for monetary damages, and all such claims will be dismissed.

## b.      Prospective Injunctive Relief

Unlike Plaintiff's claims for monetary damages, Plaintiff's claims against Defendants in their official capacities for prospective injunctive relief are not necessarily barred, as an exception to sovereign immunity holds:

> [I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties...an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Ex Parte Young*, 209 U.S. 123, 155-56 (1908).  Under the *Ex Parte Young* doctrine, a plaintiff may "bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations."  *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)).  "To determine if *Ex Parte Young* applies, [the Court] 'need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id*. (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)) (internal citation and quotation marks omitted).  Here, the Court has determined that Plaintiff has not identified a constitutional violation, much less one that is ongoing, and Plaintiff's claims for prospective injunctive relief, as well as his motion for injunctive relief [Doc. 3] will be denied.  *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (noting injunctive relief is extraordinary remedy granted "only if the movant carries his or her burden of proving that the circumstances clearly demand it").

## III.    CONCLUSION

For the reasons set forth above:

1.      Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

14

2.          Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3.          The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4.          The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5.          Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6.          Plaintiff's motion for injunctive relief [Doc. 3] is **DENIED**;

7.          This action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

8.          The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

                         */s/ Charles E. Atchley, Jr.*
                         **CHARLES E. ATCHLEY, JR.**
                         **UNITED STATES DISTRICT JUDGE**